1  Christopher Chorba (State Bar No. 216692)
   GIBSON, DUNN & CRUTCHER LLP
2  333 South Grand Avenue
   Los Angeles, CA  90071-3197
3  Telephone:     213.229.7396
   Facsimile:     213.229.6396
4  Email: cchorba@gibsondunn.com

5  John D. W. Partridge (State Bar No. 255570)
   GIBSON, DUNN & CRUTCHER LLP
6  1801 California St., Suite 4200
   Denver, CO  80202-2642
7  Telephone:     303.298.5700
   Facsimile:     303.298.5907
8  Email: jpartridge@gibsondunn.com

9
   *Attorneys for Charlotte's Web, Inc.*
10 [Additional Counsel Listed on Signature Page]

11                 **UNITED STATES DISTRICT COURT**

12                **NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN JOSE DIVISION**

| | |
|---|---|
| 14 MICHELE MCCARTHY, individually and on behalf of all others similarly situated, | CASE NO. 5:19-cv-07836-BLF |
| 15            Plaintiff, | **DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF** |
| 16 | |
| 17    v. | |
| 18 CHARLOTTE'S WEB HOLDINGS, INC., a Colorado Corporation, | **Action Filed**:  November 30, 2019 |
| 19            Defendant. | **Hearing**: |
| 20 | Date:  June 4, 2020 |
| 21 | Time:  9:00 a.m. |
| | Courtroom:  Courtroom 3 – 5th Floor |
| 22 | Judge:  Judge Beth Labson Freeman |

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

---

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 4, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth Labson Freeman, in Courtroom 3, 5th Floor, of the U.S. District Court for the Northern District of California in the San Jose Courthouse, 280 South 1st Street, San Jose, California, 95113, Defendant Charlotte's Web, Inc.,[1] will and does move this Court, pursuant to Rules 8, 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's Complaint in its entirety on the grounds that the Court lacks jurisdiction over the claims, Plaintiff has failed to state a claim against Defendant upon which relief may be granted, and/or that Plaintiff has failed to state with particularity the circumstances constituting fraud.  In the alternative, Defendant moves the Court to stay the case under the primary-jurisdiction doctrine pending completion of regulatory action by the U.S. Food and Drug Administration.

Defendant's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Julie Whitney, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

---

[1]  The Complaint names "Charlotte's Web Holdings, Inc., a Colorado Corporation," which does not exist.  The undersigned counsel notified Plaintiff's counsel of this fact on February 10, 2020, and inquired whether Plaintiff would amend her Complaint to name the correct entity, Charlotte's Web, Inc., a Delaware Corporation.  Plaintiff has not done so.  In the interest of efficiency, Charlotte's Web, Inc. has decided to respond to the Complaint to highlight the fundamental legal flaws that require dismissal of the Complaint in its entirety.

ii

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

## ISSUES TO BE DECIDED

1. Whether the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff does not have standing to bring her claims.

2. Whether the Court lacks personal jurisdiction over Defendant for purposes of the nationwide class allegations under Federal Rule of Civil Procedure 12(b)(2).

3. Whether the Complaint fails to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

4. Whether the case should be stayed under the primary-jurisdiction doctrine because the U.S. Food and Drug Administration is currently engaged in rulemaking and other regulatory activity concerning threshold legal issues raised by the Complaint.

Gibson, Dunn &
Crutcher LLP

iii
DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

BACKGROUND ........................................................................................................................... 3

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT ................................................................................................................................. 7

I.     Plaintiff Lacks Standing To Bring Her Claims ................................................................. 8

       A.     Plaintiff Received A Full Refund And Thus Has No Injury In Fact ........................... 8

       B.     Plaintiff Lacks Standing To Pursue Injunctive Relief Because She Has Not
              Alleged That She Intends To Purchase Charlotte's Web Products In The Future ........ 9

       C.     Plaintiff Lacks Standing To Pursue Claims For Products She Did Not Purchase ...... 11

II.    Federal Law Preempts Plaintiff's Claims ........................................................................ 12

III.   Plaintiff's FAL, CLRA, And UCL Claims For Equitable Relief Should Be Dismissed
       Because Plaintiff Has An Alternative Remedy At Law .................................................... 14

IV.    Plaintiff Fails To State A Claim Under Rule 12(b)(6) And Rule 9(b) ................................ 15

       A.     Plaintiff's Sole, Conclusory Assertion About Her Purported Reliance On The
              Labeling Of Charlotte's Web CBD Oil Does Not Suffice To State A Claim
              Under The FAL, The CLRA, Or The UCL's "Fraudulent" Prong ........................... 15

       B.     Plaintiff Does Not State A Claim For Relief Under The UCL's "Unlawful"
              Prong ........................................................................................................................ 16

       C.     Plaintiff Does Not State A Claim For Relief Under The UCL's "Unfair" Prong ....... 17

       D.     Plaintiff's Warranty Claims Should Be Dismissed Because She Does Not
              Identify Any Express Or Implied Warranties ............................................................ 18

V.     Plaintiff's Nationwide Class Claims Should Be Dismissed For Lack Of Personal
       Jurisdiction .................................................................................................................... 20

VI.    Alternatively, The Court Should Stay This Case Under The Primary-Jurisdiction
       Doctrine ......................................................................................................................... 21

CONCLUSION ............................................................................................................................ 23

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

<b>TABLE OF AUTHORITIES</b>

<u>Page(s)</u>

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011).................................................................................................16

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)..................................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................7

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)..................................................................................................7

*Becker v. Skype Inc.*,
No. 12-CV-06477-EJD, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ...............................8, 9

*Beecher v. Google N. Am. Inc.*,
No. 18-CV-00753-BLF, 2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) ................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017)....................................................................................................20, 21

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)...........................................................................................................1, 13

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)................................................................................................7

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2001) ................................................................................................15

*Camacho v. Automobile Club of S. Cal.*,
142 Cal. App. 4th 1394 (2006) ......................................................................................18, 19

*Chavez v. Blue Sky Nat. Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)........................................................................................13

*Clancy v. The Bromley Tea Co.*,
308 F.R.D. 564 (N.D. Cal. 2013).........................................................................................12

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008).........................................................................................2, 21

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997)..................................................................................................7

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*,
   642 F.3d 849 (9th Cir. 2011)................................................................10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).....................................................................20

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)..................................................................9

*Dinan v. SanDisk LLC*,
   No. 18-CV-05420-BLF, 2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ...........................7

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................................17

*Fonseca v. Goya Foods Inc.*,
   No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..........................15

*Gardner v. Safeco Ins. Co. of Am.*,
   No. 14-CV-02024-JCS, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ..........................15

*Gomez v. Jelly Belly Candy Co.*,
   No. 17-CV-0575, 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017)................................15

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .........................................15, 17, 18, 20

*Hemp Indus. Ass'n v. Drug Enforcement Admin.*,
   357 F.3d 1012 (9th Cir. 2004)..................................................................3

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999)................................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)............................................................15, 16

*Kwikset Corp. v. Super. Ct.*,
   246 P.3d 877 (Cal. 2011) ....................................................................15

*Lengen v. Gen. Mills, Inc.*,
   185 F. Supp. 3d 1213 (E.D. Cal. 2016)........................................................19

*Leonhart v. Nature's Path Foods, Inc.*,
   No. 13-CV-00492-BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014)..................12, 17, 23

*Lepkowski v. CamelBak Prod., LLC*,
   No. 19-CV-04598-YGR, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) ......................8, 10

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)..................................................................18

Gibson, Dunn &
Crutcher LLP

vi

TABLE OF AUTHORITIES
(continued)

Page(s)

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................8

*Luman v. Theismann*,
    647 F. App'x 804 (9th Cir. 2016) .............................................................................8

*Maneely v. Gen. Motors Corp.*,
    108 F.3d 1176 (9th Cir. 1997) ................................................................................19

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ...................................................................................9

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ...................................................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................................11

*In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*,
    623 F.3d 1200 (8th Cir. 2010) ................................................................................14

*Min Sook Shin v. Umeken USA, Inc.*,
    773 F. App'x 373 (9th Cir. 2019) ...........................................................................10

*Mullins v. Premier Nutrition Corp.*,
    No. 13-CV-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ........................14

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ....................................................................17

*Nunez v. Saks Inc.*,
    771 F. App'x 401 (9th Cir. 2019) ...........................................................................10

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..................................................................................7

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .....................................................................1, 13, 14

*Philips v. Ford Motor Co.*,
    726 F. App'x 608 (9th Cir. 2018) ...........................................................................14

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014) ................................................................................................11

*Prudential Home Mortg. Co. v. Super. Ct.*,
    66 Cal. App. 4th 1236 (1998) .................................................................................14

*Rojas v. Bosch Solar Energy Corp.*,
    386 F. Supp. 3d 1116 (N.D. Cal. 2019) ..................................................................19

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Romero v. HP, Inc.*,
    No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017)..........................................12

*S. Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ......................................................................................................18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)......................................................................................................7

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ...................................................................................................................10

*Snyder v. Green Roads of Fla.*,
    No. 19-CV-62342, 2020 WL 42239 (S.D. Fla. Jan. 3, 2020) ................................................3, 12, 23

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002).......................................................................................................22

*United States v. Gen. Dynamics Corp.*,
    828 F.2d 1356 (9th Cir. 1987).....................................................................................................21

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000).......................................................................................................6

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986).......................................................................................................19

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .......................................................................................17

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004).........................................................................................................6

**Statutes**

Agriculture Improvement Act of 2018, Pub. L. No. 115-334
    (codified at 7 U.S.C. §§ 1639o–1639s)...................................................................................3, 11, 22

7 U.S.C. § 1639r(c) ..........................................................................................................................3, 22

7 U.S.C. § 5940 ........................................................................................................................................3

21 U.S.C. § 321(ff) ..................................................................................................................................6

21 U.S.C. § 336 .......................................................................................................................................13

28 U.S.C. § 2201 .....................................................................................................................................10

28 U.S.C. § 2201(a) ..........................................................................................................................10, 11

Cal. Comm. Code § 2314(2) .................................................................................................................19

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Comm. Code § 2607(3)(A) ................................................................................19

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ..............................2

False Advertising Law, Cal. Bus. & Prof. Code § 17500 ...........................................2

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ...........................2

**Regulations**

21 C.F.R. § 10.115(b) .................................................................................................5

21 C.F.R. § 101.3(g) ...................................................................................................6

84 Fed. Reg. 12,969 (Apr. 3, 2019) ..........................................................................22

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................7

Fed. R. Civ. P. 9(b) .....................................................................................2, 7, 15, 16

Fed. R. Civ. P. 12(b)(1) ............................................................................................4, 6

Fed. R. Civ. P. 12(b)(2) ...........................................................................................7, 20

Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 7, 15

**Other Authorities**

FDA.gov, FDA Regulation of Cannabis and Cannabis-Derived Products, Including
Cannabidiol (CBD), https://www.fda.gov/news-events/public-health-focus/fda-
regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd
(last visited Mar. 13, 2020) ..................................................................................22

FDA, Regulatory Procedures Manual, Ch. 4 (Nov. 2019), *available at*
https://www.fda.gov/media/71878/download ...........................................................5

Lowell Schiller, Principal Associate Commissioner for Policy, FDA, Remarks at the
National Industrial Hemp Council 2019 Hemp Business Summit (Aug. 13, 2019) ....................22

Testimony of Amy Abernethy, MD, PhD, Principal Deputy Commissioner, Office of
the Commissioner, FDA, Dep't of Health and Human Servs. before the Senate
Comm. on Agriculture, Nutrition, and Forestry (July 25, 2019),
https://www.fda.gov/news-events/congressional-testimony/hemp-production-and-
2018-farm-bill-07252019 .....................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2       Plaintiff Michele McCarthy premises her Complaint on her purchase of a single cannabidiol

3  ("CBD") product from Defendant Charlotte's Web, for which she obtained a full refund more than five

4  months before filing this suit.  Based on threadbare allegations about that single purchase and bald

5  legal conclusions that selling CBD is "illegal," Plaintiff's Complaint seeks a broad range of monetary

6  and equitable remedies for herself and several classes of consumers under a grab bag of California

7  consumer protection statutes and the federal Declaratory Judgment Act ("DJA").  In so doing, Plaintiff

8  asks this Court to make legal rulings that would conflict with the exclusive enforcement authority of

9  the U.S. Food and Drug Administration ("FDA") and interfere with the FDA's active, ongoing

10  regulatory activity concerning CBD products.

11       In light of Plaintiff's full refund, this case should never have been filed.  But that threshold flaw

12  is only one of the Complaint's many fundamental infirmities.  This Court should dismiss the Complaint

13  for multiple, independent reasons:

14       **1. Plaintiff lacks standing to bring this suit.**  Plaintiff sought and received a full refund for

15       the purchase she made from Charlotte's Web, and she therefore has not suffered any actual

16       injury in fact.  Plaintiff also lacks standing to pursue injunctive relief because she has not

17       alleged that she intends to purchase Charlotte's Web products in the future.  And she further

18       lacks standing to bring claims related to products she never purchased.  With no cognizable

19       harm to Plaintiff, her lawsuit cannot proceed.

20       **2. The Federal Food, Drug, and Cosmetic Act ("FDCA") preempts Plaintiff's claims.**  The

21       FDCA vests the FDA with exclusive authority to regulate the labeling and marketing of

22       dietary supplements and enforce the FDCA provisions governing such products.  Because

23       Plaintiff bases her claims on alleged FDCA violations (specifically, legal assertions in non-

24       binding warning letters issued by the FDA to other CBD companies), the Act impliedly

25       preempts her suit.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001);

26       *Perez v. Nidek Co.*, 711 F.3d 1109, 1119–20 (9th Cir. 2013).

27       **3. Plaintiff's claims for equitable relief under California's Unfair Competition Law**

28       **("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA")**

*are barred because she has an alternative remedy at law.*[2]  Plaintiff's claims for breach of purported express and implied warranties would provide an adequate remedy at law.  Even though those claims are legally baseless, they preclude Plaintiff's request for equitable relief under the California consumer protection statutes.

*4.  Plaintiff's bare-bones, conclusory allegation regarding the labeling of Charlotte's Web products fails to satisfy the pleading standards imposed by Rule 9(b) and Rule 12(b)(6).*  Plaintiff's Complaint hinges on purportedly false, misleading, or deceptive product labeling and warranties, yet she includes only a *single sentence* in her Complaint about the labeling on Charlotte's Web products.  Further, she fails to allege any specific statements or claims made by Charlotte's Web on which she actually relied.  Her Complaint therefore falls far short of the standard for well-pleaded claims under Rule 9(b) and Rule 12(b)(6).

*5.  Plaintiff's putative nationwide class claims under the DJA must also be dismissed because the Court lacks personal jurisdiction over Charlotte's Web with respect to those claims.*  Charlotte's Web is not subject to general jurisdiction in California, and claims on behalf of non-California residents who did not purchase products in California have no nexus with California to support specific jurisdiction over Charlotte's Web.

For the reasons described below, Plaintiff cannot cure these deficiencies through amendment. Accordingly, the Court should dismiss all of Plaintiff's claims with prejudice.

*In the alternative, the Court should stay this case under the primary-jurisdiction doctrine.* As a prudential matter, federal courts may stay a case when an otherwise judicially cognizable claim implicates the special expertise of an agency with regulatory authority over the subject matter of the complaint.  *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Here, Plaintiff's Complaint turns on the legal status of, and proper labeling for, CBD products.  In response to Congress's command, the FDA currently is formulating significant regulatory action on precisely those issues.  In such circumstances, courts routinely stay cases like this under the primary-jurisdiction

---

[2]  Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; False Advertising Law, Cal. Bus. & Prof. Code § 17500; and Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

Gibson, Dunn & Crutcher LLP

2

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

doctrine. Most notably, the only federal court to address a similar complaint against another CBD company did just that in January. *See Snyder v. Green Roads of Fla.*, No. 19-CV-62342, 2020 WL 42239, at *7 (S.D. Fla. Jan. 3, 2020). This Court should do the same if it does not dismiss Plaintiff's Complaint.

**BACKGROUND**

***Hemp and CBD.*** Cannabidiol, or CBD, is one of more than 80 cannabinoid compounds found in the hemp plant (*Cannabis sativa* L.). Although CBD's popularity has surged in recent years, *see* Compl. ¶ 4, various categories of hemp-based products have long been marketed in the United States as dietary supplements and/or food. As the Ninth Circuit explained in a 2004 decision upholding the permissibility of selling certain hemp-based food products: "Congress was aware of the presence of trace amounts of psychoactive agents . . . in the resin of non-psychoactive hemp when it passed the 1937 'Marihuana Tax Act,' and when it adopted the Tax Act marijuana definition in the [Controlled Substances Act]. . . . Congress knew what it was doing, and its intent to exclude non-psychoactive hemp from regulation is entirely clear." *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 357 F.3d 1012, 1018 (9th Cir. 2004).

The recent growth in the CBD industry, *see* Compl. ¶ 4, has coincided with amendments to federal law that further clarified hemp's legal status. In 2014, Congress passed legislation that expressly legalized the production of, and research into, so-called "industrial" hemp under the auspices of research institutions and state departments of agriculture. 7 U.S.C. § 5940. Congress defined such hemp as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol ['THC'] concentration of not more than 0.3 percent on a dry weight basis." *Id.*

In December 2018, five months before Plaintiff purchased a Charlotte's Web product, Congress expanded the legal status of hemp products through the Agriculture Improvement Act of 2018, Pub. L. No. 115-334 (codified at 7 U.S.C. §§ 1639o–1639s) (the "2018 Farm Bill"). This Act removed low-THC hemp and hemp products from the definition of "marijuana" in the Controlled Substances Act, and provided that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance" with federal law. 2018 Farm Bill § 10114. The 2018 Farm Bill also explicitly preserved the FDA's authority to regulate hemp products. 7 U.S.C. § 1639r(c).

Gibson, Dunn &
Crutcher LLP

3

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

1    ***Charlotte's Web.***  Charlotte's Web, based in Boulder, Colorado, produces and distributes hemp-

2    derived CBD products nationwide.  *See* Compl. ¶¶ 3, 14.  Charlotte's Web does not produce or sell

3    medicinal or recreational marijuana or products derived therefrom.  Instead, the company's CBD

4    products originate from proprietary hemp genetics that are processed into low-THC (and thus non-

5    psychoactive) hemp-derived CBD extracts.  Charlotte's Web product categories include CBD oil

6    tinctures (liquid products), CBD capsules, and other edible forms of CBD.  *See id.* ¶ 1.

7    ***Plaintiff's Purchase and Refund.***  Plaintiff is a California resident who alleges that she made

8    a single purchase of "CBD Oil" on May 17, 2019, for $254.77 via the Charlotte's Web website.  Compl.

9    ¶ 13.  She does not allege that she viewed that product's labeling, packaging, or container while

10   shopping online.  Nor does she allege that she purchased any other Charlotte's Web product.  Yet she

11   nevertheless purports to bring putative class-action claims based on purchases of "CBD Liquid

12   Capsules," "CBD Gummies," and "CBD Isolate."  *Id.* ¶ 1.

13   Plaintiff's Complaint omits the fact that she received a full refund for her purchase.  On June 26,

14   2019, Plaintiff returned the CBD Oil she originally purchased to Charlotte's Web, and she received a

15   refund that same day for the full purchase price of $254.77.  *See* Declaration of Julie Whitney (Exhibit

16   1) (hereinafter "Whitney Decl.") (attaching Charlotte's Web order and refund confirmation records).[3]

17   ***Plaintiff's Mislabeling Allegations.***  Plaintiff alleges that Charlotte's Web labels its products

18   as "dietary supplements" and that she would not have purchased CBD Oil from Charlotte's Web had

19   she known that the FDA has claimed that CBD cannot be sold as a "dietary supplement."  *See* Compl.

20   ¶¶ 16, 22.  Specifically, Plaintiff contends that, based on FDA warning letters and other public

21   statements, all of the CBD products marketed by Charlotte's Web are "illegal to sell," *id.* ¶ 2, because

22   they (1) "contain the illegal dietary ingredient CBD," and/or (2) are "mislabeled as Dietary

23   Supplements," *id.* ¶ 17.

24   Based on these contentions, Plaintiff alleges that Charlotte's Web has engaged in "multiple and

25

26   _____

27   [3]  Charlotte's Web submits the Whitney Declaration for consideration in connection with its motion

28   under Rule 12(b)(1).  As described below, the Court may consider evidence outside the Complaint

     on a motion under Rule 12(b)(1).

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

prominent systematic mislabeling of the Products." Compl. ¶ 6.  But her factual allegations concerning the alleged "systematic mislabeling" comprise only a single sentence:  "Every product contains a Supplement Facts section on the back of the container which is reserved for dietary supplements and explicitly state 'Dietary Supplement' on the front of the packaging." *Id.* ¶ 17.  Plaintiff does not identify any particular claims, packaging, advertising, or marketing materials that she read, viewed, or relied on when deciding to purchase the Charlotte's Web CBD Oil product.  Other than the alleged violation of FDA-enforced labeling requirements, Plaintiff does not allege that the CBD Oil she purchased was deficient, or different from what she thought she was purchasing, in any respect.

**The FDA's Assertions Relating to CBD Sales and Plaintiff's Associated Allegations.**  In support of her mislabeling contentions, Plaintiff relies almost exclusively on allegations that the FDA has issued warning letters to other CBD companies and that the FDA has stated publicly its position that CBD may not be marketed as a dietary supplement.  Compl. ¶¶ 16–17.[4]

Neither FDA warning letters nor the FDA's other public statements on CBD marketing have the force of law.  As the FDA itself acknowledges, warning letters do not represent final agency action and are purely "informal and advisory."  *See* FDA, Regulatory Procedures Manual, Ch. 4, at 4 (Nov. 2019), *available at* https://www.fda.gov/media/71878/download.  A warning letter "communicates the agency's position on a matter, but it does not commit the FDA to taking enforcement action," and thus the "FDA does not consider Warning Letters to be final agency action on which it can be sued." *Id.* Moreover, the FDA's Good Guidance Practices expressly exclude "general information documents provided to consumers or health professionals," "press materials," "warning letters," and "other communications directed to individual persons or firms" from the definition of "guidance document." 21 C.F.R. § 10.115(b).  At most, therefore, the FDA has issued "informal" and "advisory" communications that bind neither the public nor the FDA itself.

Because the FDA has not issued formal guidance on the topic of CBD sales, let alone initiated

---

[4]  Plaintiff also tacks on cursory allegations that Charlotte's Web product labeling violates the California Sherman Act, but those allegations are entirely derivative of purported FDCA violations.  *See* Compl. ¶¶ 20–21, 41, 43.

Gibson, Dunn & Crutcher LLP

notice-and-comment rulemaking, Plaintiff's allegations incorporating the FDA's assertions are nothing more than unsupported legal conclusions and are entitled to no deference by the Court.

***Legal Landscape Relating to Dietary Supplements.*** Federal law *requires* that dietary supplements—which are broadly defined to include products taken by mouth that contain a "dietary ingredient" such as vitamins, minerals, amino acids, and herbs or botanicals, 21 U.S.C. § 321(ff)(1)— be labeled as "dietary supplements." *See* 21 C.F.R. § 101.3(g) ("Dietary supplements shall be identified by the term 'dietary supplement' as a part of the statement of identity"). In accordance with this statutory requirement, Charlotte's Web has labeled certain of its products as dietary supplements.

Based on the FDA's non-binding statements in warning letters to other CBD companies, Plaintiff asserts that CBD should be "excluded" from the definition of "dietary supplement" and therefore may not be labeled as such. Compl. ¶ 19. Under 21 U.S.C. § 321(ff)(3)(B), if a substance is an active ingredient in an FDA-approved drug, or has been authorized for investigation as a new drug for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public, then products containing that substance are excluded from the definition of dietary supplement. Plaintiff's contention is that CBD falls under this exclusion and therefore cannot be marketed as a dietary supplement. *Id.* However, there are also exceptions to the exclusion: if the substance was marketed in food or as a dietary supplement before the drug was approved or before the substantial clinical investigations involving the drug had been instituted, the exclusion does not apply. 21 U.S.C. § 321(ff)(3)(B). In her Complaint, Plaintiff neither analyzes these provisions nor pleads facts that show how or why the dietary-supplement exclusion applies to the Charlotte's Web product she purchased.

## LEGAL STANDARD

***Rule 12(b)(1).*** Rule 12(b)(1) challenges to subject matter jurisdiction may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Whereas a court looks only at the allegations in the complaint for a facial Rule 12(b)(1) motion, a factual Rule 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), and to resolve factual disputes in the process of determining the existence of subject matter jurisdiction, *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). A court does not presume

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

the truthfulness of a complaint's allegations when resolving a factual Rule 12(b)(1) motion. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**Rules 8 and 12(b)(6).**  To survive scrutiny under Rules 8 and 12(b)(6), a plaintiff must allege facts that, if true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint may be dismissed under Rules 8 and 12(b)(6) for either of two reasons: (i) lack of a cognizable legal theory; or (ii) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

**Rule 9(b).**  Plaintiff's claims under the UCL, FAL, and CLRA also must satisfy Rule 9(b)'s strict pleading standard, *see Dinan v. SanDisk LLC*, No. 18-CV-05420-BLF, 2020 WL 364277, at *5 (N.D. Cal. Jan. 22, 2020), which requires stating "with particularity" "the circumstances constituting fraud," Fed. R. Civ. P. 9(b).  Under Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction," *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original), and must instead "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement," *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

**Rule 12(b)(2).**  A defendant may seek dismissal of an action, or of particular claims, for lack of personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  Under Rule 4(k)(1)(A), federal district courts have personal jurisdiction over a defendant if the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," here California.  Plaintiffs bear the burden of showing that courts have personal jurisdiction over defendants. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

ARGUMENT

Plaintiff's Complaint does not satisfy the legal standards set forth above.  Because the fundamental flaws in her Complaint cannot be cured through amendment, the Court should dismiss this case with prejudice.  In the alternative, the Court should stay Plaintiff's case based on the primary-jurisdiction doctrine, while the FDA engages in regulatory activities regarding the nationwide sale of

Gibson, Dunn & Crutcher LLP

7

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

CBD products as dietary supplements.

## I.      Plaintiff Lacks Standing To Bring Her Claims

### A.      Plaintiff Received A Full Refund And Thus Has Suffered No Injury In Fact

Plaintiff received a full refund for her purchase of Charlotte's Web CBD Oil several months before she filed this suit.  *See* Whitney Decl., ¶¶ 8–9.  Thus, she cannot allege an "injury in fact" to establish her standing to bring a suit for monetary relief under Article III of the U.S. Constitution.  *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 806 (9th Cir. 2016) (affirming dismissal where defendant introduced declaration showing that plaintiff "filed his complaint two months after he received a monetary refund from [defendant], and therefore no longer met the injury-in-fact requirement for standing").

Article III limits the jurisdiction of federal courts to the resolution of cases and controversies.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).  The requirement that a plaintiff have standing—i.e., a sufficient personal interest in the outcome of the litigation—"is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To have standing, a plaintiff must have suffered an "injury in fact," defined as the "invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent."  *Id.* (internal quotation marks and internal citations omitted).

A plaintiff who receives a full refund for her purchase before filing suit lacks an "injury in fact" to bring any claim for monetary relief.  *See Luman*, 647 F. App'x at 806.  Indeed, "courts have routinely found that" plaintiffs who receive a full refund prior to filing a consumer class-action suit arising from the refunded purchase "lack standing to pursue monetary claims."  *Lepkowski v. CamelBak Prods., LLC*, No. 19-CV-04598-YGR, 2019 WL 6771785, at *2 (N.D. Cal. Dec. 12, 2019) (collecting cases and affirming dismissal of claims for lack of standing where plaintiff was provided a refund); *see also Becker v. Skype Inc.*, No. 12-CV-06477-EJD, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (same).

Plaintiff's Complaint fits squarely within this settled rule.  Her sole alleged injury arises from her purchase of "CBD Oil in olive oil flavor for $254.77 from Defendant's website" on May 17, 2019.

Gibson, Dunn &
Crutcher LLP

8

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

Compl. ¶ 13.[5]  But Charlotte's Web provided Plaintiff with a full refund for this purchase less than six weeks later on June 26, 2019, after Plaintiff returned the product to Charlotte's Web.  *See* Whitney Decl., ¶ 9.  Then, more than five months *after she received her money back* from Charlotte's Web, Plaintiff filed this putative class action on the sole basis of her original (long-since-refunded) purchase. Accordingly, Plaintiff cannot allege any cognizable injury arising from the purported mislabeling of the Charlotte's Web CBD Oil she purchased, and she lacks standing to pursue any monetary remedies.

Moreover, because Plaintiff cannot now purchase *other* Charlotte's Web products and credibly assert that she has been deceived by reliance on the alleged mislabeling, she cannot take any steps that would afford her standing to sue for monetary relief.  This Court should therefore dismiss her claims for monetary relief with prejudice.

B. **Plaintiff Lacks Standing To Pursue Injunctive Relief Because She Has Not Alleged That She Intends To Purchase Charlotte's Web Products In The Future**

Because Plaintiff does not assert that she plans to purchase CBD products from Charlotte's Web in the future, she faces no prospect of any future harm from the purported mislabeling of the company's CBD products and therefore lacks standing to pursue injunctive relief.

Under Article III, plaintiffs must show that they face a "real or immediate threat . . . that [they] will again be wronged in a similar way" in order to obtain injunctive relief.  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).  "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling" if "the consumer may suffer an 'actual and imminent . . .' threat of future harm."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (acknowledging that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").

---

[5]  Plaintiff does not even attempt to plead that she sustained injury from the time spent obtaining a refund or based on "interest" she is owed on the refunded amount, perhaps recognizing the futility of such arguments in this District.  *See Becker*, 2014 WL 556697, at *2 (rejecting plaintiff's alleged standing based on time "spent communicating with [defendant] in order to get" a refund, or "interest on his refund").

Gibson, Dunn & Crutcher LLP

9

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

But the mere possibility that allegedly false labeling might exist in the future is not enough. A plaintiff must plead an actual intent to purchase the product again. Where the plaintiff does not allege "any intent to purchase [the] product in the future," dismissal of a claim for injunctive relief is required. *See Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019) (affirming dismissal of claims under UCL, FAL, and CLRA because plaintiff did not allege intent to purchase product in the future); *Min Sook Shin v. Umeken USA, Inc.*, 773 F. App'x 373, 375 (9th Cir. 2019) (affirming dismissal where pleadings made it clear that plaintiff "certainly will not purchase [the] product in the future"). Indeed, "[n]umerous courts . . . have held that absent a plausible allegation suggesting that a plaintiff intends to purchase the products in the future, they cannot establish the requisite likelihood of future injury needed to have standing to pursue injunctive relief." *Lepkowski*, 2019 WL 6771785, at *3 (collecting cases).

Here, Plaintiff seeks injunctive relief, *see* Compl. ¶¶ 7, 9, but does not allege that she ever plans to purchase CBD products from Charlotte's Web in the future. The most she can muster is that "Plaintiff and Class Members are likely to continue to be damaged . . . because Defendant continues to disseminate misleading information on the Products' packaging." *Id.* ¶ 48. Thus, her allegation focuses on what *Charlotte's Web* will do in the future, not what *she* will do. That is not enough to establish the prospect of future harm based on her intent to purchase a Charlotte's Web product. As a result, Plaintiff lacks standing to pursue injunctive relief on behalf of herself or the putative class. *See Nunez*, 771 F. App'x at 402; *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (explaining that "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief").

Plaintiff's addition of a claim under the DJA, 28 U.S.C. § 2201, does not cure her lack of standing. The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Although the DJA "expanded the scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction, or the 'right of entrance to federal courts.'" *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) (quoting *Skelly Oil Co. v. Phillips*

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

*Petroleum Co.*, 339 U.S. 667, 671 (1950)).  Invoking the DJA on behalf of a putative nationwide class, Compl. ¶ 83, Plaintiff asks for a declaration that "Defendant has misrepresented the nature, ingredients and effectiveness of the Products and that its actions are unlawful."  *Id.* ¶ 88.  But the DJA cannot confer standing where none exists, and Plaintiff has suffered no injury in fact and has no prospect of future harm.  As a result, the Court lacks subject matter jurisdiction over her suit, including her DJA claim.[6]

The Court should therefore dismiss the Complaint in its entirety.

### C.   Plaintiff Lacks Standing To Pursue Claims For Products She Did Not Purchase

If this Court concludes that Plaintiff does have standing to seek monetary or injunctive relief on her own behalf—an essential prerequisite to her bringing claims on behalf of others—it still should rule that she lacks standing to pursue claims regarding products that she never purchased.  Plaintiff asserts that she can represent a class of purchasers of Charlotte's Web "CBD Liquid Capsules," "CBD Gummies," and "CBD Isolate" based on her purchase of the company's CBD Oil in olive oil flavor.  *Compare* Compl. ¶ 1, *with id.* ¶ 13.  But Plaintiff lacks standing to pursue claims arising from purchases she never made.

A putative class representative generally does not have standing to pursue claims based on

---

[6]  Even if Plaintiff had standing to pursue this suit, it would nevertheless be appropriate for this Court to refuse to hear her DJA claim.  A district court has discretion over whether to decide a claim under the DJA.  *See* 28 U.S.C. § 2201(a) (a court "may declare the rights and other legal relations" of parties (emphasis added)).  This provision "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).  Here, the Court should decline to exercise its discretion to decide Plaintiff's declaratory judgment claim because issuing a declaratory judgment would usurp the FDA's regulatory authority under the FDCA and the 2018 Farm Bill, conflict with the FDCA's enforcement provisions, and contravene the settled principle that "[p]rivate parties may not bring enforcement suits" under the FDCA.  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014).

Gibson, Dunn & Crutcher LLP

11
DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

products that she herself did not purchase.  *See, e.g.*, *Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *7–8 (N.D. Cal. Jan. 27, 2017).  Although this issue is not always decided at the pleading stage, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) (issue may be addressed at the class-certification stage), it is appropriate to dismiss claims where a plaintiff has not carried her burden to show that the unpurchased products are "so substantially similar to the [p]urchased [p]roducts as to satisfy Article III requirements," *Leonhart v. Nature's Path Foods, Inc.*, No. 13-CV-00492-BLF, 2014 WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014).

Here, Plaintiff does not plead enough to show how the other products that she did not purchase are "substantially similar" to the CBD Oil that she did purchase.  At most, Plaintiff alleges that these products include CBD as an ingredient and have similar labeling to the product she purchased.  *See* Compl. ¶ 17.  Yet, this Court has expressly held that where a "[p]laintiff does not allege that the products are substantially similar beyond having the same labeling statements," dismissal based on standing is appropriate.  *Leonhart*, 2014 WL 6657809, at *3.  That rule applies here because Plaintiff does not allege that the unpurchased CBD products contain "largely the same ingredients" as the CBD Oil she purchased.  *See id.* (explaining that courts should consider whether an unpurchased product is "comprised of largely the same ingredients" in making a determination on Article III standing).  Plaintiff also does not (and cannot) allege that the wide array of unpurchased products she identifies are "of the same kind" as her purchased oil given their distinct form, ingredients, and uses.  *See id.* (stating that courts also should consider whether unpurchased products are "of the same kind" in analyzing standing).  She therefore lacks standing to assert claims based on those unpurchased products.

The Southern District of Florida reached precisely that conclusion in *Snyder v. Green Roads of Florida*, a very similar case against another CBD company, where the court dismissed claims related to any products that the plaintiff did not purchase.  2020 WL 42239, at *3.  Consistent with *Snyder* and *Leonhart*, this Court also should dismiss Plaintiff's Complaint as to all unpurchased products.

## II.     Federal Law Preempts Plaintiff's Claims

As the Ninth Circuit has held, the FDCA vests the FDA with exclusive authority to enforce the FDCA and therefore impliedly preempts state-law claims that "conflict[] with the FDCA's enforcement

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

1  scheme." *Perez*, 711 F.3d at 1119–20.  Because Plaintiff's claims amount to no more than "private

2  enforcement of the" FDCA, they are "barred." *Id.* at 1119.

3  Under 21 U.S.C. § 337, all "proceedings for the enforcement, or to restrain violations, of [the

4  FDCA] shall be by and in the name of the United States."  Congress further preserved the FDA's

5  enforcement discretion by stating that "[n]othing in [the FDCA] shall be construed as requiring the

6  [FDA] to report for prosecution . . . minor violations of [the FDCA] whenever [it] believes that the

7  public interest will be adequately served by a suitable written notice or warning."  21 U.S.C. § 336.

8  In *Buckman*, the Supreme Court explained that the FDCA "leaves no doubt that it is the *Federal*

9  *Government* rather than private litigants who are authorized to file suit for noncompliance."  531 U.S.

10  at 349 n.4 (emphasis added).  Thus, state-law claims are impliedly preempted where the "claims exist

11  solely by virtue of the FDCA . . . requirements."  *Id.* at 353.

12  Applying *Buckman*, the Ninth Circuit held in *Perez* that the FDCA preempted a state-law claim

13  against a medical device manufacturer and group of physicians filed by plaintiffs who alleged they

14  were "subject to the off-label use of a medical device for eye surgeries" when the FDA "status of the

15  device was not disclosed to them."  711 F.3d at 1111.  According to the plaintiffs, the "FDA had not

16  approved" the medical device for the surgeries they underwent and "had they known, they would not

17  have consented to the surgeries."  *Id.* at 1112.  The district court dismissed the plaintiffs' state-law

18  claims, and the Ninth Circuit affirmed, *id.* at 1111, holding that the plaintiffs' claim for fraud by

19  omission was "impliedly preempted because it amounts to an attempt to privately enforce the FDCA."

20  *Id.* at 1117.  The Ninth Circuit emphasized that "[t]he FDA knew about the allegations . . . [of]

21  unapproved . . . use[s] and took steps to address the allegations by issuing warning letters . . . , but it

22  did not take final action against the defendants."  *Id.* at 1120.

23  To be sure, state-law fraud and mislabeling claims may coexist with the FDCA in certain limited

24  instances, for example when "the claims do not depend on a judicial determination whether the FDCA

25  has been violated."  *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 374 (N.D. Cal. 2010); *see*

26  *also Perez*, 711 F.3d at 1119 ("[C]ourts have acknowledged that some fraud and false advertising

27  claims related to FDA status may go forward.").  But there is only a "'narrow gap' through which a

28  state-law claim [can] fit to escape preemption by the FDCA."  *Perez*, 711 F.3d at 1120 (citing *In re*

Gibson, Dunn &
Crutcher LLP

13

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

*Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)).  A "plaintiff must not be suing *because* the conduct violates the FDCA" given that "such a claim would be impliedly preempted under *Buckman*."  *Id.* (emphasis added).

Here, Plaintiff is suing precisely because (in her view) the sale of CBD products violates the FDCA—i.e., because Charlotte's Web allegedly markets its products contrary to federal prohibitions on marketing CBD products as dietary supplements.  Indeed, Plaintiff expressly alleges that "Defendant's Products cannot be dietary supplements *because* they do not meet the definition of a dietary supplement under" the FDCA.  Compl. ¶ 19 (emphasis added); *see also id.* ¶ 55 ("Defendant . . . misled consumers acting reasonably . . . *because* the Products are illegally labeled as dietary supplements." (emphasis added)); *id.* ¶ 56 (alleging Plaintiff suffered injury "because" of labeling indicating "that the Products were legal dietary supplements").  And Plaintiff also relies on the FDA's warning letters, which, in turn, assert violations of the FDCA.  *Id.* ¶ 16.  In fact, Plaintiff does not allege there is anything else false or misleading about calling CBD a dietary supplement aside from her assertion (based on the FDA's position) that CBD does not meet the FDCA's definition of that term.  Because Plaintiff is seeking a ruling that would interfere with the FDA's exclusive authority—and discretion—to enforce the FDCA, her claims are impliedly preempted under *Buckman* and *Perez*.

### III.  Plaintiff's FAL, CLRA, And UCL Claims For Equitable Relief Should Be Dismissed Because Plaintiff Has An Alternative Remedy At Law

Both the UCL and the FAL provide only equitable remedies, and Plaintiff seeks only equitable relief under the CLRA.  *See* Compl. ¶¶ 66–67.  Because Plaintiff has an adequate remedy at law, her claims for equitable relief under these three statutes cannot proceed.

Equitable remedies "are 'subject to fundamental equitable principles, including inadequacy of the legal remedy.'"  *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (quoting *Prudential Home Mortg. Co. v. Super. Ct.*, 66 Cal. App. 4th 1236 (1998)).  The question is not whether Plaintiff is *likely* to prevail on her legal claims.  Rather, the question is whether, assuming she *could* prevail, the available remedy would be "adequate."  *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018).  In such circumstances—where plaintiffs have an adequate legal remedy and thus cannot claim a right to equitable relief—courts dismiss

Gibson, Dunn & Crutcher LLP

14

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

plaintiffs' equitable causes of action.  *See, e.g.*, *Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing UCL request for equitable relief because plaintiffs did not allege that the other legal claims seeking damages were inadequate); *Gomez v. Jelly Belly Candy Co.*, No. 17-CV-0575, 2017 WL 8941167, at *2 (C.D. Cal. Aug. 18, 2017) (ruling that "Plaintiff's claims under the UCL and FAL, and her claim under the CLRA to the extent it seeks equitable relief, must be dismissed" because plaintiff had an adequate remedy at law).

Here, Plaintiff seeks monetary relief for her breach of warranty claims, *see* Compl. ¶¶ 74, 81, and she pleads no facts suggesting these legal remedies would be inadequate.  Thus, if Plaintiff were able to state a successful warranty-based claim, a legal remedy would adequately compensate her for her alleged harm.  *Cf. Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) (dismissing unjust enrichment claim because contract damages would be adequate); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-CV-02024-JCS, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014) (holding contract remedy was adequate).  Because Plaintiff has not alleged a right to equitable relief, each of her equitable claims—including her entire UCL, FAL, and CLRA causes of action—must be dismissed.

## IV.    Plaintiff Fails To State A Claim Under Rule 12(b)(6) And Rule 9(b)

### A.    Plaintiff's Sole, Conclusory Assertion About Her Purported Reliance On The Labeling Of Charlotte's Web CBD Oil Does Not Suffice To State A Claim Under The FAL, The CLRA, Or The UCL's "Fraudulent" Prong

"Because the same standard for fraudulent activity governs all three statutes [i.e., the UCL, FAL, and CLRA], courts often analyze the three statutes together."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).  To state a mislabeling claim under the three statutes, a plaintiff must plead that (1) the defendant's statements violate labeling regulations, (2) the plaintiff actually relied on the labeling statements when deciding to purchase the products, and (3) the plaintiff suffered "economic injury."  *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011).  The "particular circumstances surrounding" the alleged misrepresentations must be alleged with particularity because Rule 9(b) applies to the FAL, the CLRA, and the fraudulent prong of the UCL.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Accordingly, when a plaintiff fails to specify what "advertisements or other sales material specifically stated," "when he was exposed

Gibson, Dunn & Crutcher LLP

15

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

1   to them or which ones he found material," and "which sales material he relied upon in making his

2   decision to buy," dismissal is required.  *Id.* at 1126.

3       Here, Plaintiff alleges that each Charlotte's Web product states "dietary supplement" on the

4   front of the package and includes a "Supplement Facts section on the back of the container."  Compl.

5   ¶ 17.  Although Plaintiff alleges that she made her purchase of CBD Oil on the Charlotte's Web

6   website, she never alleges that she read any particular information (e.g., information regarding the

7   status of CBD as a "dietary supplement") on the website.  Indeed, nowhere in Plaintiff's Complaint

8   does she plead that she actually reviewed the CBD Oil's package or container on the Charlotte's Web

9   website before purchasing the CBD Oil.  Nor does she identify any other specific Charlotte's Web

10  product, product labeling, or marketing materials that she saw, let alone when she viewed them or

11  whether they included any purported misstatements.

12      Absent any specificity whatsoever about her asserted reliance, Plaintiff's claims cannot stand

13  on her bare, conclusory allegation that she "would not have purchased the Products" if she had known

14  about the purported mislabeling.  Compl. ¶¶ 22, 56.  "Courts in this district have consistently held that

15  '*plaintiffs in misrepresentation cases must allege that they actually read the challenged*

16  *representations*' to state a claim."  *Beecher v. Google N. Am. Inc.*, No. 18-CV-00753-BLF, 2018 WL

17  4904914, at *2 (N.D. Cal. Oct. 9, 2018) (dismissing UCL, CLRA, and FAL claims for failure to plead

18  reliance) (internal quotations and citation omitted).  Plaintiff's failure to plead that she actually read or

19  relied on the alleged mislabeling requires dismissal.  *Id.*

20      **B.**    **Plaintiff Does Not State A Claim For Relief Under The UCL's "Unlawful" Prong**

21      Plaintiff's claim under the UCL's "unlawful" prong fares no better.  "By proscribing any

22  unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful

23  practices that the unfair competition law makes independently actionable."  *Alvarez v. Chevron Corp.*,

24  656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotation marks omitted).  But nothing

25  in the Complaint states a claim for an "independently actionable" unlawful practice.

26      To the extent that Plaintiff's UCL "unlawful" prong claim is based on alleged fraud or deception

27  under the UCL, CLRA, or FAL, the claim fails for the same reasons articulated above.  "Where Plaintiff

28  has alleged a 'unified course of fraudulent conduct,' Rule 9(b)'s particularity requirement applies to

Gibson, Dunn &
Crutcher LLP

16

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

the unlawful and unfair prong of the UCL in addition to the above-discussed fraudulent prong." *Hadley*, 243 F. Supp. 3d at 1094 (citation omitted).  Because Plaintiff has not adequately pleaded any particular statement that she viewed or relied on, her UCL "unlawful" prong claim also fails.

Nor can Plaintiff avoid these pleading requirements by simply asserting that CBD products are "illegal" or "misbranded."  An "unlawful" prong claim based solely on alleged violations of the FDCA or California's Sherman Law is not permitted.  *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013) ("Defendant's mere alleged violation of the underlying regulations, without more," is not enough "to state a claim for a UCL unlawfulness prong violation.").  Rather, Plaintiff must "show that [she] lost money or property *because of reliance on* an allegedly unlawful practice, in order to establish standing for UCL unlawfulness claims."  *Id.* at 1145 (emphasis added).

To be sure, Plaintiff alleges (albeit incorrectly) that Charlotte's Web did not comply with the FDCA's dietary supplement labeling requirements.  But, again, she does not allege that she actually read or relied on any assertion by Charlotte's Web, and thus her Complaint does not state a claim under the UCL unlawfulness prong, either.  *See Leonhart*, 2014 WL 6657809, at *4 (granting motion to dismiss "as to all claims based upon the 'misbranded' or 'unlawful product' theory"); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1088–89 (N.D. Cal. 2014) (rejecting a claim based solely on alleged mislabeled products because "extending the UCL to encompass this type of theory would expand liability to reach any violation of the underlying regulations—even if no consumer relied on the statements that violate those regulations").

### C.   Plaintiff Does Not State A Claim For Relief Under The UCL's "Unfair" Prong

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law."  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 929 (N.D. Cal. 2018).  The "proper definition [of unfair] in the consumer context is 'currently in flux' among California courts," *id.*, but Plaintiff's claim here fails under each test that the courts use.

As an initial matter, Plaintiff's claim under the "unfair" prong of the UCL fails for the same reasons as her other UCL claims.  "Courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

Gibson, Dunn &
Crutcher LLP

17

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

survive if the claims under the other two prongs of the UCL do not survive." *Hadley*, 243 F. Supp. 3d at 1104–05.   Absent any reason to distinguish Plaintiff's "unfair" prong theory from her other inadequate UCL assertions, this Court should dismiss Plaintiff's "unfair" prong claim along with her other UCL claims.

The same result is warranted if this Court applies the balancing test enunciated in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 864 (1999).   Under that case, a practice is "unfair" "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."   *Id.*   The court then balances "the harm to the consumer against the utility of the defendant's practice."   *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007).

Here, Plaintiff does not contend that the labeling of Charlotte's Web CBD products is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."   Nor does she allege a violation of an "established" public policy.   If anything, her allegations that the CBD market is "expected to further expand" by 2025, Compl. ¶ 4, and her reliance on nonbinding, advisory FDA warning letters, demonstrate that public policy regarding CBD is *not* "established."   Thus, under the *South Bay* balancing test, Plaintiff's UCL "unfair" prong claim fails.

Finally, the Ninth Circuit has warned against using the test under Section 5 of the Federal Trade Commission Act in the consumer context, *Lozano*, 504 F.3d at 736, but even applying that test compels the same conclusion.   As employed in *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006), the test includes three elements: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."   But Plaintiff has suffered *no* harm (having obtained a complete refund), let alone a "substantial" harm.   Plaintiff's claim therefore also fails under the Section 5 test.

### D.   Plaintiff's Warranty Claims Should Be Dismissed Because She Does Not Identify Any Express Or Implied Warranties

***Express Warranty.***   Count IV of Plaintiff's Complaint alleges a breach of express warranties under Cal. Comm. Code § 2313(1).   Under Section 2313, "[a]ny affirmation of fact or promise made

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Id.* "[T]o plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  Representations regarding a product must be "specific and unequivocal."  *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

Here, however, the Complaint is devoid of any allegation regarding the "exact terms" of an express warranty as to Charlotte's Web CBD Oil.  The most that Plaintiff asserts is that the words "dietary supplement" appear on the packaging and container, Compl. ¶ 17, but she does not point to any "specific and unequivocal" promise that the "goods shall conform to the affirmation or promise." Plaintiff's allegations are therefore insufficient to state a claim for breach of express warranty.

Moreover, Plaintiff did not provide the required notice for an express warranty claim, a failure that independently requires dismissal.  "Under California law, pre-suit notice generally is required prior to filing a claim for breach of express warranty."  *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1126 (N.D. Cal. 2019) (citing Cal. Comm. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy.")); *see also Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213, 1222–23 (E.D. Cal. 2016) (dismissing warranty claim for failure to provide required pre-suit notice). Plaintiff provided no such notice to Charlotte's Web.

***Implied Warranty.***  Count V of Plaintiff's Complaint alleges a breach of an implied warranty of merchantability under Cal. Comm. Code § 2314.  Under California law, an implied warranty can be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) the product does not "[c]onform to the promises or affirmations of fact made on the container or label if any."  Cal. Comm. Code § 2314(2).

With respect to the first implied warranty theory, Plaintiff fails to allege adequately that the products marketed by Charlotte's Web are not "fit for the[ir] ordinary purpose."  Indeed, rather than allege that Charlotte's Web CBD Oil failed to provide the specific benefits associated with its ordinary

Gibson, Dunn & Crutcher LLP

19

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

use (or even identify those benefits), she instead contends that it is illegal to call CBD products dietary supplements. Her lone allegation expressly tied to this implied warranty theory amounts to no more than a bare legal conclusion, which this Court should disregard. *See* Compl. ¶ 80 (alleging that the putative class did not receive goods "impliedly warranted by Defendant to be merchantable in that . . . they [are not] fit for their ordinary purpose of providing the benefits as promised").

With respect to the second implied warranty theory, "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley*, 243 F. Supp. 3d at 1106. Thus, just as Plaintiff's express warranty claim fails, so too does her implied warranty of merchantability theory.

## V. Plaintiff's Nationwide Class Claims Should Be Dismissed For Lack Of Personal Jurisdiction

If this Court does not dismiss the Complaint in its entirety based on the pleading deficiencies discussed above, Plaintiff's putative nationwide class-action claims under the DJA should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

Personal jurisdiction may be either general or specific. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). A court may exercise general jurisdiction to hear "any and all claims" against a corporation *only* when the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted). In all but "exceptional" cases, a corporation is considered to be "at home" *only* in its "place of incorporation [and] principal place of business." *Id.* at 137 & n.19.

Here, Plaintiff does not allege that general jurisdiction exists. Nor could she: Charlotte's Web is headquartered in Colorado and incorporated in Delaware. *See* Compl. ¶ 14; ECF No. 26 (Corporate Disclosure Statement). In addition, Charlotte's Web lacks any other continuous and systematic contacts with California that would render it subject to general jurisdiction in the state. *See* Whitney

DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE, AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

Decl., ¶ 3.

In order for a "court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (internal quotation marks and alterations omitted). This Court may be able to assert specific personal jurisdiction over Charlotte's Web with respect to Plaintiff's individual claims and those claims she filed on behalf of the California subclass. But the same cannot be said for claims Plaintiff brought on behalf of a nationwide class. As the Supreme Court has concluded, courts do not have specific personal jurisdiction over nonresident defendants in relation to the claims of nonresident plaintiffs when there is no connection between those plaintiffs' claims and the defendant's contacts with the forum state. *Id.* at 1780. This is true even where the court may exercise specific jurisdiction over similar or even identical claims raised by other resident plaintiffs in the same action. *Id.*

The Complaint fails to allege any link, much less an adequate link, between California and the claims Plaintiff filed on behalf of nationwide putative class members to establish that those claims "arise out of or relate to" any contacts Charlotte's Web may have with California. *Bristol-Meyers*, 137 S. Ct. at 1780 (internal quotation marks and alterations omitted). Plaintiff does not allege, for example, that any of the putative class members saw marketing or advertisements from Charlotte's Web in California, purchased the CBD products in California, or suffered any injury in California. Plaintiff's proposed nationwide class claims in Count VI therefore should be dismissed under Rule 12(b)(2).

## VI.   Alternatively, The Court Should Stay This Case Under The Primary-Jurisdiction Doctrine

Under the primary-jurisdiction doctrine, courts may, as a prudential matter, "route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved," *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987), and stay the case pending the agency's analysis, *Clark*, 523 F.3d at 1114. In evaluating whether to do so, the Court must consider "(1) [the] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor*

Gibson, Dunn & Crutcher LLP

1   *Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

2   Congress explicitly recognized the FDA's jurisdiction to regulate hemp products in the 2018

3   Farm Bill.  *See* 7 U.S.C. § 1639r(c).  Congress thereby reinforced the FDA's longstanding and

4   comprehensive authority over the labeling of foods and dietary supplements under the FDCA.

5   Questions regarding the labeling of hemp products, like the Charlotte's Web CBD products at issue

6   here, therefore rest squarely within the FDA's realm of responsibility.  Indeed, the 2014 and 2018 Farm

7   Bills, taken together with the FDCA, subject the hemp industry to comprehensive regulatory oversight,

8   which is primarily vested in the FDA.

9   Currently, the FDA is actively engaged in regulatory activity concerning hemp and CBD

10  products, including the proper labeling of those products.  *See, e.g.,* FDA.gov, FDA Regulation of

11  Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD), https://www.fda.gov/news-

12  events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-

13  cannabidiol-cbd (last visited Mar. 13, 2020); *see also* Scientific Data and Information About Products

14  Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments, 84

15  Fed. Reg. 12,969 (Apr. 3, 2019) (announcing May 2019 public hearing and request for public

16  comments); Lowell Schiller, Principal Associate Commissioner for Policy, FDA, Remarks at the

17  National Industrial Hemp Council 2019 Hemp Business Summit (Aug. 13, 2019) ("Given the

18  substantial public interest in the possibility of CBD in foods and/or supplements, FDA is actively

19  evaluating whether such rulemaking might be appropriate for CBD."); *id.* ("The CBD working group

20  is evaluating all the data available to us, including data we received through the public hearing and the

21  public docket, and evaluating our policy options."); Testimony of Amy Abernethy, MD, PhD, Principal

22  Deputy Commissioner, Office of the Commissioner, FDA, Dep't of Health and Human Servs. before

23  the Senate Comm. on Agriculture, Nutrition, and Forestry (July 25, 2019), https://www.fda.gov/news-

24  events/congressional-testimony/hemp-production-and-2018-farm-bill-07252019 (explaining to Senate

25  Committee that "the Agency is exploring options to reach a resolution" on CBD regulations "quickly

26  and efficiently").  In light of the statutory backdrop and the FDA's ongoing regulatory activity,

27  proceeding with this case now would interfere with the FDA's primary jurisdiction over CBD labeling.

28  This Court has stayed cases "pending final FDA guidance" in other settings where the FDA

Gibson, Dunn &
Crutcher LLP

22
DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

was considering regulations on a topic central to the Plaintiff's complaint. *Leonhart*, 2014 WL 6657809, at *5 (staying case pending completion of FDA regulatory activity). And at least one other federal court, confronting nearly identical issues in a case brought by Plaintiff's counsel against another CBD company, has concluded that the primary-jurisdiction doctrine required a stay. *Snyder*, 2020 WL 42239 at *7 (staying case until the FDA completes its regulatory activity regarding the marketing and labeling of CBD products). As the *Snyder* court explained, "[a]lthough the FDA rulemaking process is ongoing, the FDA is under considerable pressure from Congress and industry to expedite the publication of regulations and policy guidance regarding CBD products." *Id.* at *6 (citing congressional pressure and media reports asking the FDA to expedite its regulatory process). If the Court does not dismiss Plaintiff's claims in their entirety, it should follow the *Snyder* court's lead and stay this case until the FDA has completed its ongoing regulatory processes regarding hemp and CBD products.

## CONCLUSION

Plaintiff's Complaint seeks relief to address a supposed injury that Charlotte's Web remedied months before Plaintiff filed suit. The full refund she received from Charlotte's Web deprives this Court of subject matter jurisdiction to hear her claims for monetary relief. And Plaintiff's failure to allege that she intends to purchase Charlotte's Web products in the future means that she lacks standing to pursue injunctive relief. But even if Plaintiff had standing to pursue her claims, they could not survive scrutiny at the pleading stage. Because Plaintiff seeks to step into the shoes of the FDA to enforce the FDCA's labeling provisions relating to dietary supplements, the FDCA impliedly preempts her claims. And because she alleges entitlement to an adequate legal remedy through her breach-of-warranty claims, her claims for equitable relief under the UCL, FAL, and CLRA are barred (even though her warranty claims also fail as a matter of law). Plaintiffs' FAL and CLRA claims—as well as her UCL "fraudulent" conduct claim—are also legally deficient for the additional reason that Plaintiff fails to allege that she read the labeling, package, or containers of the Charlotte's Web CBD Oil before making a purchase. Even her UCL allegations that Charlotte's Web engaged in "unlawful" or "unfair" conduct only underscore that the FDCA preempts her claims—or, in the alternative, that this Court should stay this litigation to allow the FDA to complete the regulatory analysis of hemp and

Gibson, Dunn &
Crutcher LLP

23
DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF

1  CBD that Congress delegated to that agency.

2      The multiple fundamental flaws identified throughout this Motion establish that any

3  amendment of this Complaint would be futile.  The Court should dismiss the Complaint with prejudice,

4  or in the alternative, stay the case under the primary-jurisdiction doctrine.

7  Dated: March 16, 2020

9                              By: */s/ John D. W. Partridge*

11                              John D. W. Partridge (State Bar No. 255570)
                                Reid F. Rector (*pro hac vice pending*)
                                Natalie Hausknecht (*pro hac vice pending*)
12                              GIBSON, DUNN & CRUTCHER LLP
                                1801 California St., Suite 4200
13                              Denver, CO  80202-2642
                                Telephone:     303.298.5700
14                              Facsimile:      303.298.5907
                                Email:     jpartridge@gibsondunn.com
15                                         rrector@gibsondunn.com
                                           nhausknecht@gibsondunn.com

17                              Christopher Chorba (State Bar No. 216692)
                                GIBSON, DUNN & CRUTCHER LLP
18                              333 South Grand Avenue
                                Los Angeles, CA  90071-3197
19                              Telephone:     213.229.7396
                                Facsimile:      213.229.6396
20                              Email:     cchorba@gibsondunn.com

22                              Amir C. Tayrani (State Bar No. 229609)
                                GIBSON, DUNN & CRUTCHER LLP
23                              1050 Connecticut Avenue, N.W.
                                Washington, D.C.  20036
24                              Telephone:     202.887.3692
                                Facsimile:      202.530.9645
25                              Email:     atayrani@gibsondunn.com

                                *Attorneys for Charlotte's Web, Inc.*

Gibson, Dunn &
Crutcher LLP

24
DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR STAY THE CASE,
AND MEMORANDUM IN SUPPORT THEREOF – CASE NO. 5:19-CV-07836-BLF